Elgin Gregory KING *v.* STATE of Arkansas

CR 95-1175                                        916 S.W.2d 732

Supreme Court of Arkansas
Opinion delivered March 11, 1996

*William R. Simpson, Jr.*, Public Defender, by: *Sally Collins*, Dep. Public Defender.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Elgin Gregory King, appeals the judgment of the Pulaski County Circuit Court convicting him of first-degree murder and sentencing him to forty years imprisonment. For reversal, appellant contends first, that the trial court erred in failing to declare one of the state's witnesses an accomplice as a matter of law or in failing to instruct the jury on the accomplice question, and second, that there was insufficient evidence of guilt. We find the trial court erred in refusing to instruct the jury on the accomplice question and therefore reverse and remand. We address the trial court's ruling on accomplice status as a matter of law for the benefit of the trial court as an issue that is likely to arise on retrial.

Appellant and Kenneth Lamont Slocum were charged by felony information with the capital murder of Willie Simpkins. The cases were severed. Appellant was tried by a jury and convicted of the lesser-included offense of first-degree murder.

## SUFFICIENCY OF THE EVIDENCE

■ Preservation of appellant's right to freedom from double jeopardy requires that we consider a challenge to the sufficiency of the evidence prior to considering alleged trial error. *Young* v. *State*, 316 Ark. 225, 871 S.W.2d 373 (1994); *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992); *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984) (citing *Burks* v. *United States*, 437 U.S. 1 (1978)). Therefore, although raised as the final point of appeal, we consider the sufficiency argument prior to considering the other points relating to alleged trial error. *Young*, 316 Ark. 225, 871 S.W.2d 373. In determining the sufficiency question, we disregard any alleged trial errors, because to do otherwise would result in avoidance of the sufficiency argument by remanding for retrial on other grounds. *Id.* (citing *Har-*

*ris*, 284 Ark. 247, 681 S.W.2d 334).

At the close of the state's case, appellant moved for a directed verdict based on insufficient evidence, arguing specifically that the state had failed to prove premeditation and deliberation, the correct date of death, and that appellant caused the death of the victim. Appellant also moved for direction of a verdict due to lack of corroborating evidence of the testimony of Vernon Scott, the state's witness who appellant contends is an accomplice. Appellant renewed these arguments at the close of all the evidence. On appeal, appellant asserts simply that there was insufficient evidence of guilt of first-degree murder, arguing that Scott's testimony resulted in speculation and conjecture and therefore does not constitute substantial evidence. This latter argument is all that we address, as appellant has abandoned on appeal the other arguments raised below. *Dillard* v. *State*, 313 Ark. 439, 855 S.W.2d 909 (1993).

We treat the denial of a motion for directed verdict as a challenge to the sufficiency of the evidence. *Lukach*, 310 Ark. 119, 835 S.W.2d 852. The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict; substantial evidence must be forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* On appellate review, it is only necessary for us to ascertain that evidence which is most favorable to appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993).

The following evidence, as viewed most favorably to appellee, was presented at trial. The medical examiner testified that the victim suffered ten separate gunshot wounds. The source of the gunshots either came from two shooters, or one shooter who fired from two positions. A possible murder weapon came into police custody, a .380-caliber Lorcin semi-automatic pistol. The Lorcin had previously been reported stolen by a Marvin Baccus, who purchased the gun. A handwriting expert from the Internal Revenue Service testified that the person who signed the name of Marvin Baccus when purchasing the gun was Shelby Baccus. A firearms toolmark examiner from the Arkansas State Crime Laboratory testified that a bullet found in the victim's body was

fired from the .380-caliber Lorcin. The same firearms examiner testified that a .45-caliber bullet recovered from the victim's head was the same type of bullet as bullets recovered by police from appellant's grandmother's house. He explained the bullets were similar in that they were both full-metal jacketed, both weighed 230 grains, and both had an exposed lead base which is characteristic of any number of brands. At the scene where the victim's body was found, police found a rubber mask. Scott identified appellant as one of the two persons who abducted the victim at gunpoint just minutes before Scott heard gunshots. His identification of appellant was based on his knowing appellant for most of his life, recognizing the clothes he was wearing hours prior to the crime, and recognizing appellant's voice. Scott remembered appellant wearing a costume mask and brandishing a semi-automatic weapon when the victim was abducted.

■ We conclude that the foregoing constitutes substantial evidence in support of the jury's verdict. The trial court ruled that Scott was not an accomplice as a matter of law; therefore, there was no requirement of corroborating evidence to send the case to the jury for deliberation. Accordingly, the trial court did not err in denying the motion for directed verdict.

## ACCOMPLICE AS A MATTER OF LAW

Appellant contends the trial court erred in failing to declare Scott an accomplice as a matter of law. The trial court held a hearing on appellant's motion in limine to have Scott so declared. At the hearing, Scott testified that, approximately thirty minutes to an hour before the murder, he was approached by appellant's co-defendant, Slocum, who asked appellant if he could "get Willie [Simpkins] out." Scott stated that he responded affirmatively, and Slocum then promised to "take care of [Scott]." Scott continued that he then lured the victim to a nearby site, the home of Louis Hattison, where he and the victim together consumed forty ounces of beer and crack cocaine worth $40.00. Scott stated that appellant and Slocum later appeared at Hattison's home, masked and brandishing weapons, and abducted the victim from the house. Scott testified that when he gave his first statement to the police, he denied seeing who entered Hattison's home and abducted the victim. Scott explained his denial as being protective of himself and his fam-

ily. The state conceded that Scott made the denial in his first statement. Scott also testified that he received cash payments from the North Little Rock Police Department prior to and after the date appellant and Slocum were charged in this case. Most significantly, however, Scott stated at the pretrial hearing on the motion in limine that he did not know the reason Slocum had asked him to lure the victim to Hattison's house.

After hearing the foregoing evidence, the trial court stated that it had not heard any evidence that Scott had knowledge of the crime that was going to occur. Accordingly, the trial court refused appellant's request to declare Scott an accomplice as a matter of law. Appellant renewed this request at a subsequent pretrial hearing; again, the trial court denied the request on the same basis. We find no error in these two rulings.

The defendant bears the burden of proving that a witness is an accomplice. *Cole* v. *State*, 323 Ark. 8, 913 S.W.2d 255 (1996). An accomplice is one who, with the purpose of promoting or facilitating the commission of an offense, either solicits, advises, encourages, or coerces another person to commit the offense, aids, agrees to aid, or attempts to aid the other person in planning or committing the offense, or, having a legal duty to prevent the offense, fails to make a proper effort to prevent the commission of the offense. Ark. Code Ann. § 5-2-403 (Repl. 1993). One's status as an accomplice is a mixed question of law and fact. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981). One's presence at the crime scene or failure to inform law enforcement officers of a crime does not make one an accomplice as a matter of law. *Pilcher* v. *State*, 303 Ark. 335, 796 S.W.2d 845 (1990) (citing *Spears* v. *State*, 280 Ark. 577, 660 S.W.2d 913 (1983)). The facts do not show conclusively that Scott was an accomplice. The trial court was therefore correct in refusing to declare him an accomplice as a matter of law. *Cole*, 323 Ark. 8, 913 S.W.2d 255; *Pilcher*, 303 Ark. 335, 796 S.W.2d 845.

## FAILURE TO GIVE PROFFERED INSTRUCTIONS ON STATUS AS ACCOMPLICE

Appellant proffered AMI Crim. 2d 402, entitled "Accomplice Status Undisputed — Corroboration," and AMI Crim. 2d 403, entitled "Accomplice Status in Dispute — Corroboration," which the trial court refused without explanation.

Appellant argues the trial court's ruling was error. Our law is well-settled that a witness's status as an accomplice is a mixed question of law and fact, and that when the status of a witness presents issues of fact, the defense is entitled to have the question submitted to the jury. *Earl*, 272 Ark. 5, 612 S.W.2d 98; *Jackson* v. *State*, 193 Ark. 776, 102 S.W.2d 546 (1937). The question must be submitted to the jury where there is any evidence to support a jury's finding that the witness was an accomplice. *Id.*

Scott testified at trial, consistent with his testimony at the hearing on the motion in limine. His trial testimony, however, revealed the following additional facts that were not revealed at the hearing. Appellant and Slocum are cousins. Scott was "hanging out" on a street corner in his neighborhood when Slocum approached him and asked him to lure the victim to Hattison's house. With Slocum were Shelby Baccus and Vida Davis. At that time, appellant was not with Slocum and the two others; rather, he was on his grandmother's porch, which is across the street from the "hang-out" corner. Scott explained Slocum's statement that Slocum would take care of Scott to mean that, in exchange for Scott luring the victim to Hattison's home, Slocum would pay Scott in rock cocaine. Scott estimated he received rock cocaine worth $40.00 from Slocum. Scott testified that, approximately five minutes after appellant and Slocum left Hattison's home with the victim, he heard a flurry of about ten gunshots. The first thought that came to Scott's mind upon hearing the shots was, "[t]hey done shot that boy." Scott explained the cash payments he received from the North Little Rock Police were for food and lodging for him and his parents to relocate after Scott told what he knew about the victim's murder to the police. Most significantly, however, Scott stated that the reason the victim was killed was because the victim possessed knowledge that would implicate Slocum's brother in another murder case. Scott testified that to avoid the victim's implication of Slocum's brother, "they had to eliminate Willie [Simpkins], I imagine."

Scott's testimony at trial creates a fact question as to his status as an accomplice. He knew there was ill will between the victim and the co-defendants. He was offered rock cocaine in return for luring the victim to the co-defendant's reach. He initially denied knowledge of the co-defendants' involvement in the crime. On this evidence, some of which was not known until

Scott testified at trial, the trial court erred in refusing to give the proffered instruction AMI Crim. 2d 403. Due to the error, the jury was not given an opportunity to consider whether Scott was an accomplice and, if so, whether there was sufficient corroborating evidence presented. We therefore reverse the judgment of conviction and remand for a retrial.

■ We are well aware that when there is insufficient evidence to corroborate an accomplice's testimony, the only remedy is reversal and dismissal due to jeopardy considerations. *Foster v. State*, 290 Ark. 495, 720 S.W.2d 712 (1986), *supplemental opinion on denial of reh'g*, 290 Ark. 498, 722 S.W.2d 869, *cert. denied*, 482 U.S. 929 (1987). However, in such cases, the witness's status as an accomplice is not a fact question. *See, id.* When, as in the present case, the witness's status as an accomplice presents a jury question and the jury was erroneously not given the opportunity to pass on that question, remand for retrial is the appropriate remedy. *See Robinson v. State*, 11 Ark. App. 18, 665 S.W.2d 890 (1984). Dismissal is not required in such cases because the jeopardy clause has not been violated; error in failing to instruct the jury does not relate to sufficiency of the evidence and the jeopardy clause. *See United States v. Miller*, 952 F.2d 866 (5th Cir.), *cert. denied*, 112 S. Ct. 3029 (1992) (citing *Forman v. United States*, 361 U.S. 416 (1960)). Retrial is the proper remedy where, as here, the jury was not given the chance to consider the question of the status of the accomplice, for it is quite possible for the jury to conclude either that the witness was not an accomplice or that there is sufficient corroborating evidence.

The judgment of conviction is reversed due to the error in refusing to give AMI Crim. 2d 403. The case is remanded for retrial.