Charles WHITFIELD *v.* STATE of Arkansas

CR 00-1139                                        56 S.W.3d 357

Supreme Court of Arkansas
Opinion delivered September 20, 2001

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. In February 1999, a jury found Charles Whitfield guilty of four counts of rape, one count of attempted rape, five counts of residential burglary, one count of attempted residential burglary, one count of second-degree battery, and one count of exposure to human immunodeficiency virus. Mr. Whitfield was sentenced to four terms of life imprisonment in the Arkansas Department of Correction for the four counts of rape and to lesser terms for the other crimes, with the sentences to run concurrently. Mr. Whitfield's only argument on appeal is that the trial court erred in denying his motion for a directed verdict because the DNA evidence, standing alone,

did not constitute substantial evidence to identify him as the perpetrator of the crimes. We find no merit in this argument, and we affirm.

## I. Standard of Review

■■ A motion for a directed verdict is a challenge to the sufficiency of the evidence to support the verdict. *Russey v. State*, 336 Ark. 401, 985 S.W.2d 316 (1999). This court will affirm a conviction if there is substantial evidence to support the verdict when viewed in the light most favorable to the State. *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000), *cert. denied*, 531 U.S. 1081 (2001). Substantial evidence is evidence of sufficient force and character as to compel, with reasonable certainty, a conclusion beyond mere speculation or conjecture. *Id.* Sufficient evidence may be circumstantial or direct. *Id.* Circumstantial evidence must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*

## II. Sufficiency of the Evidence

At trial, the State's expert testified that the probabilities that someone other than Mr. Whitfield committed the rapes were one in 800 billion in the black population. Mr. Whitfield does not challenge the admissibility of the DNA evidence or the validity of the scientific DNA tests performed. His only challenge is that this DNA evidence, with no other corroborating evidence, is not sufficient to identify him as the perpetrator of the crimes.

■■ Before addressing Mr. Whitfield's sole point on appeal, we first note that DNA profiles have been admissible evidence in Arkansas since 1991. *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991). In *Prater*, we also held that a DNA expert may testify using probability extrapolations based on the DNA profiling. *Id.* DNA evidence is no longer considered to be novel scientific evidence and has generally been accepted as proof of guilt. *Engram v. State, supra.* In *Burmingham v. State*, we affirmed the trial court's ruling that, in addition to probability statistics, a DNA expert witness could give his opinion as to whether or not the "appellant was the source of the DNA material found on the victim's vaginal swab." *Burmingham v. State*, 342 Ark. 95, 105, 27 S.W.3d 351, 357 (2000).

In *Engram*, just as in the instant case, the appellant argued that uncorroborated DNA evidence was insufficient as proof of identity to support his conviction. *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000). Mr. Engram was found guilty of capital murder and rape. The State's DNA expert testified that the probability that the semen recovered from the victim belonged to a person other the Mr. Engram was one in 600 trillion. *Id.* A review of the record did not support Mr. Engram's assertion that the DNA evidence was the only evidence offered to prove his identity. In addition to the DNA evidence, a state trooper testified that he encountered Mr. Engram at the crime scene on the night of the crime and that Mr. Engram provided an implausible explanation for being there. *Id.* Circumstantial hair and fiber evidence also linked him to the crime. *Id.* This court held that the DNA evidence when considered with the additional circumstantial evidence adduced at trial was sufficient to support Mr. Engram's rape and capital-murder convictions. *Id.*

■ Likewise, we have held in other cases that DNA evidence along with other evidence corroborating the identity of the perpetrator was sufficient to support the verdict. *See Stewart v. State*, 331 Ark. 359, 961 S.W.2d 750 (1999) (DNA profile match along with fingerprint evidence and victim's identification of defendant as the perpetrator); *Russey v. State*, 336 Ark. 401, 985 S.W.2d 316 (1999) (DNA evidence and victim's identification testimony); *Wilson v. State*, 332 Ark. 7, 962 S.W.2d 805 (1998) (DNA evidence and accomplice's identification testimony).

In this case, Mr. Whitfield argues, as did the appellant in *Engram*, that the DNA evidence alone was insufficient to identify him as the perpetrator and was, thus, insufficient to support the verdict. The evidence presented at trial revealed the following facts. From November 1997 through November 1998, Little Rock Police investigated four rapes and an attempted rape that appeared to follow a similar pattern: All five crimes occurred within a few blocks of each other at about the same time in the early morning; the perpetrator wore a mask; the victims, who were all single women, described him as a medium-build, black male; the point of entry was always through a window; a weapon was used; and the perpetrator would tell the victim a wild story.

In the early morning of December 28, 1998, Lasonya Ford Norris was awake, saw a man lurking around her house, and called the police. The police detained Mr. Whitfield near her apartment. At that time, he was wearing what appeared to be a stocking cap. When the police removed the cap to ensure the officers' safety, they

discovered that it was in fact two articles: a cloth similar to a sweatshirt sleeve with eye holes cut into it and a nylon stocking that covered the shirt sleeve. This information was turned over to Detective Julie Eckert who was investigating the series of rapes in the area where Mr. Whitfield was detained. Based on that information, Detective Eckert obtained a search warrant to draw Mr. Whitfield's blood. He initially objected to the search warrant, but eventually provided a blood sample in early January 1999. Later that month, on January 20, 1999, Mr. Whitfield was apprehended a second time outside Ms. Norris's apartment, again in response to a prowler call. On April 27, 1999, Mr. Whitfield, who is HIV positive, was charged by information in Pulaski County Circuit Court with the offenses of rape (four counts), attempted rape, residential burglary (six counts), terroristic threatening, second-degree battery, and exposing another person to HIV.

At trial, Melissa Myhand, a forensic biologist with the Arkansas State Crime Laboratory, testified that she performed DNA profiling on Mr. Whitfield's blood and on semen samples taken from the rape kits of Chandra Brewer, Lenieka Brown, Rita Adams, Shante Nunn, and on a saliva stain from a mask found in the apartment of Lummie Boykins who fought off her attacker. Ms. Myhand testified that in her opinion Mr. Whitfield's DNA profile matched the DNA profiles of the samples taken from the crime scenes. She also testified that, in each of the five cases, the probability of randomly selecting an individual with the same DNA profile was approximately one in 800 billion in the black population.

The victims who testified gave the following descriptions of their attacker's mask: a ski mask with a stocking under it that had one eye cut out; a sweater cap with eyes cut out; a mask and a hood; and a mask with a stocking wrapped around it. When apprehended, Mr. Whitfield was wearing what appeared to be a stocking cap. Upon further investigation, it turned out to be a sweatshirt sleeve with eye holes cut into it, covered by a nylon stocking.

As in the case of *Engram v. State*, Mr. Whitfield wrongfully asserts that the DNA evidence was the sole proof of his identity as the perpetrator. His assertion seems to ignore other evidence introduced at trial that at least contributes to proof of his identity. First, in response to calls to the police regarding a prowler in the area, Mr. Whitfield was detained twice in the same vicinity where all of the crimes occurred and at the same time of morning that the crimes were committed. Second, when first apprehended, he was wearing a mask that fit the description given by the victims. Third, he fit the

general physical description of the perpetrator. Based on the fore-going, and, viewing the evidence in the light most favorable to the State, we hold that the DNA evidence when considered with the additional circumstantial evidence adduced at trial was sufficient evidence to support Mr. Whitfield's convictions. Thus, we need not decide whether the DNA evidence, standing alone, was sufficient proof of identity to support his convictions.

### III. Rule 4-3(h) Compliance

The transcript of the record in this case has been reviewed in accordance with Ark. Sup. Ct. R. 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a) (Repl. 1997). None has been found.

Affirmed.